**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES A. SHARPE,**

                   **Plaintiff,**               **7:08-cv-972**
                                              **(GLS)**

        **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                   **Defendant.**
_____

**APPEARANCES:**                 **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Conboy, McKay Law Firm        LAWRENCE D. HASSELER,
307 State Street                    ESQ.
Carthage, NY 13619

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    DENNIS J. CANNING
United States Attorney            Special Assistant U.S. Attorney
445 Broadway
James T. Foley U.S. Courthouse
Albany, NY 12207-2924

MARY ANN SLOAN
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Court Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

## I. __Introduction__

Plaintiff James Sharpe challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  Upon reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision.

## II. __Background__

On May 17, 2005, Sharpe filed an application for DIB under the Social Security Act, alleging disability since August 9, 2002, based on a back injury.  (Tr.[1] at 53-56, 57-61, 67.)  After his application was denied, Sharpe requested a hearing before an Administrative Law Judge (ALJ), which was held on June 22, 2007, and a supplemental hearing was held on September 24, 2007.   (Tr. at 310-21.)  On February 26, 2008, the ALJ issued a decision denying the requested benefits, (Tr. at 13-18), which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.  (Tr. at 5-7.)

Sharpe commenced the present action by filing a complaint on

---

[1]"(Tr. )" refers to the page of the administrative transcript in this case.

September 15, 2008, seeking review of the Commissioner's determination. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7,8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 11.)

## III. **Contentions**

Sharpe contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards. Specifically, Sharpe claims that the ALJ: (1) failed to properly assess the severity of his conditions; (2) improperly concluded that his back impairment did not meet a listed impairment; (3) failed to properly apply the treating physician rule; (4) failed to properly assess his residual functional capacity (RFC); (5) failed to properly evaluate his subjective allegations of pain and disabling symptoms; and (6) failed to procure the testimony of a vocational expert and otherwise satisfy his burden at step five. (*See* Pl. Br. at 10-24, Dkt. No. 9.) The Commissioner counters that substantial evidence supports the ALJ's decision.

## IV. **Facts**

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Pl. Br. at 1-9, Dkt. No. 9; Def. Br. at 1-5,

3

Dkt. No. 11.)

## V. **Standard of Review**

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process used by the

Commissioner in evaluating whether a claimant is disabled under the Act,

the court refers the parties to its previous opinion in *Christiana v. Comm'r*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

Mar. 19, 2008).

## VI. **Discussion**

### A.    **Severity of Conditions**

At step two of the Commissioner's five-step evaluation process, the

ALJ found that Sharpe suffered from the "severe" medically-determinable

impairment of "lumbar degenerative disc disease."  (Tr. at 14.)  Sharpe

contends that the ALJ erred in failing to recognize that he also suffered

from a severe mental impairment based on his "sleep deficit and mental

limitations."  (*See* Pl. Br. at 16-18, Dkt. No. 9.)

An impairment or combination of impairments is "severe" under the

regulations if it significantly limits an individual's ability to function in the

4

workplace.  *See* 20 C.F.R. § 404.1521(a).  In other words, a claimant's impairment is not severe unless it imposes more than a "minimal effect" on his ability to perform basic work activities.  *See id*.; Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).  "Basic work activities" under the regulations include the mental ability to understand, carry out, and remember simple instructions, as well as the use of judgment.  *See* 20 C.F.R. § 404.1521(b)(3), (4).  And as with steps one, three, and four of the five-step process, a claimant has the burden at step two to establish the existence of a severe, medically determinable impairment for the requisite twelve-month period.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The claimant bears the burden of proof on the first four steps, while the [Commissioner] bears the burden on the last step." (citation omitted)); 20 C.F.R. § 404.1509.

Here, substantial evidence supports the conclusion that Sharpe's alleged "sleep deficit and mental limitations" did not impose more than a minimal effect on his functional abilities for the requisite durational period. As to his sleep deficit, Sharpe points to his complaints that "his back pain causes him to toss and turn all night," and that he "naps throughout the day."  (Pl. Br. at 16-17, Dkt. No. 9 (citing Tr. at 90, 295, 300,316).)

However, in addition to Sharpe not being referred for a sleep study or to a sleep therapist during the relevant period, Sharpe's treatment notes and testimony suggest that the medication he was prescribed for his sleep problems were effective in mitigating his sleep issues and helping him to sleep throughout the night.  (Tr. at 249, 300; *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (explaining that the effectiveness of medication to alleviate a claimant's symptoms can be considered in analyzing those symptoms).)  Taken together, and in the absence of evidence that the impact of his sleep deficit was more severe, the court discerns no error in the conclusion that Sharpe's sleep issues caused no more than a minimal functional limitation.

With regard to his claimed mental limitations, Sharpe points to his complaints that he experienced anxiety as a result of a May 2005 assault, and that he had trouble with memory and focusing, arguing that these impairments significantly impacted his ability to function.  (*See* Pl. Br. at 16-17, Dkt. No. 9.)  The court disagrees.  As an initial matter, the court finds it significant that Sharpe failed to seek mental health treatment at any time during the relevant period.  *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (explaining that the Commissioner may attach significance to a

6

claimant's failure to seek any medical attention during the relevant period). Furthermore, the medical findings of record support the conclusion that Sharpe's claimed mental limitations did not significantly impact his functional abilities.  For example, during a September 15, 2005 psychological evaluation, Dr. Richard W. Williams observed that Sharpe was "alert and oriented," and "[h]is attention and concentration were good." (Tr. at 182.)  Dr. Williams also opined that Sharpe "[did] not appear to meet the diagnostic criteria for any psychological disorder," and that he "did not believe that Sharpe need[ed] psychological services at [that] time," further noting that Sharpe stated that "he [was] adjusting to the trauma [of his assault] better as time [went] on."  (Tr. at 183.)  And while Dr. Williams did observe that Sharpe's short-term recall and judgment were poor at the time of evaluation, the subsequent consultative findings of State Agency psychologist Ann Herrick indicated that Sharpe was "capable of work related tasks."  (Tr. at 203.)  Specifically, Dr. Herrick opined that while Sharpe showed moderate limitations in maintaining concentration, persistence, or pace, (Tr. at 202), he was nonetheless capable of "adequately understanding and remembering; attending, concentrating, and persisting; and interacting with others such that he [was] capable of

work-related tasks." (Tr. at 203.) Dr. Herrick also noted that "any

limitations [were] more associated with physical complaints rather than for

any psychiatric reason." (*Id.*)

Accordingly, given the record evidence, the court disagrees with

Sharpe that the ALJ erred in failing to find that his "sleep deficit and mental

limitations," either singly or in combination, amounted to a "severe"

impairment under the regulations.

**B.    Listed Impairment**

At step three, the ALJ determined that Sharpe's lumbar degenerative

disc disease, though severe, did not meet or medically equal a listed

impairment. (Tr. at 16.) Sharpe contends that the ALJ erred in this

determination, contending that his back impairment met Listing 1.04(A).

(*See* Pl. Br. at 10, Dkt. No. 9.) To satisfy Listing 1.04(A), a claimant must

show that he suffers from a spinal disorder resulting in the compromise of a

nerve root or the spinal cord with evidence of: (1) nerve root compression

characterized by neuro-anatomic distribution of pain; (2) limitation of motion

of the spine; (3) motor loss accompanied by sensory or reflex loss; and (4)

if there is involvement of the lower back, positive straight-leg raising test.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). Contrary to Sharpe's

8

contentions, substantial evidence supports the ALJ's determination that Sharpe's back impairment did not satisfy this listing.

As an initial matter, the record contains no medical evidence from or relating to the period of August 9, 2002—Sharpe's alleged onset date—through June 28, 2004.  (Tr. at 257.)  Thus, at the threshold, Sharpe has offered no evidence to support a claim that his impairment met Listing 1.04(A) for that twenty-two month period.  As to the remaining portion of the relevant period, it is not disputed that the record contains "findings of positive straight leg raising tests, sensory or reflex deficits, and limited lumbar range of motion."  (Def. Brief at 9, Dkt. No. 11.)  However, as the Commissioner correctly contends, the record contains substantial evidence to support the conclusion that Sharpe did not suffer from each of these deficits continuously during the relevant period, thereby failing to satisfy Listing 1.04(A).  *See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

Sharpe was first treated for back pain on June 28, 2004, by Dr. Shara Peets, Sharpe's primary care physician.  (Tr. at 257.)  Dr. Peets's examination notes indicate that while Sharpe complained of suffering from

9

low back pain "for about a week," the pain was "intermittent." (*Id.*) The notes further state that, upon examination, Sharpe's lumbar area was "nontender," and that Sharpe ultimately "declin[ed] specific medication for his back pain." (*Id.*) On followup with Dr. Peets two months later, Sharpe presented with "no complaint," was found to be "alert in no acute distress," and indicated that he was "training to be a truck driver." (Tr. at 256.)

Sharpe did not again present with low back pain until May 8, 2005—nearly ten months later—after lifting a bag of topsoil four days earlier. (Tr. at 147-51.) Examination at that time revealed some reduction in lumbar range of motion, but no motor, reflex, or sensory deficits. (Tr. at 152.) On May 13, 2005, a magnetic resonance imaging scan (MRI) of Sharpe's lumbar spine revealed an acute herniated disc at the L4-5 level. (Tr. at 155-157.) However, as with the May 8 examination, there were no apparent motor or sensory deficits detected. (Tr. at 157.) Sharpe's reflexes were also documented as normal, with his extremities retaining full range of motion. (*Id.*)

On June 8, 2005, Sharpe was again examined after sustaining assault-related injuries unrelated to his back. (Tr. at 159.) Examining physician Dr. Richard Stuntz observed that Sharpe was "neurologically

10

intact"; that his motor strength was "5/5 in all groups"; and that he had

"[n]ormal sensation [and] symmetric reflexes." (*Id.*)  In addition, based on a

November 4, 2005 examination, Physician's Assistant Bill Simpson stated

that, though "difficult to assess," and noting "significant weakness in all

muscle groups due to pain," he "[felt] that [Sharpe's] strength was intact

through his bilateral lower extremities." (Tr. at 234.)  Simpson also

observed that Sharpe's "[s]ensation [was] equal and intact throughout his

bilateral lower extremities." (*Id.*)  Similarly, on April 7, 2006, one week after

the relevant period expired, Dr. Michael A. Horgan examined Sharpe and

noted that Sharpe's strength and sensation were intact, that Sharpe

independently ambulated without a cane or walker, and that Sharpe was

able to climb onto the examination table without difficulty.  (Tr. at 232.)

The consultative findings of record also support the conclusion that

Sharpe's limitations were non-continuous during the relevant period.  For

example, State Agency medical consultant Dr. Donna M. White, who

reviewed the record evidence in September and August 2005, found that

Sharpe was not disabled and could perform light work.  (Tr. at 184.)

Similarly, after reviewing all the medical evidence of record, orthopedist

Richard S. Goodman opined that Sharpe did not meet or medically equal

Listing 1.04, explaining that that listing "requires ... motor loss which is not present and this must be accompanied by central reflex loss which is ... not present."  (Tr. at 268-73.)

Ultimately, while the record could support the conclusion that Sharpe may have met Listing 1.04(A) for discrete spans of time during the relevant period, substantial evidence supports the ALJ's finding that Sharpe's impairment did not produce the required deficits and limitations on a continual basis for the threshold period of twelve months.  *See* 20 C.F.R. § 404.1509.  Accordingly, the court affirms the ALJ's step-three determination that Sharpe's impairment did not meet Listing 1.04(A).

## C.   <u>Treating Physician Rule</u>

At step four, the ALJ determined that Sharpe retained the RFC to "perform sedentary work that allows for alternating as needed between sitting and standing."  (Tr. at 16.)  In making this determination, the ALJ considered the treatment notes of Dr. Peets, Sharpe's primary care physician.  Specifically, the ALJ noted that Dr. Peets opined on March 14, 2007, that "sedentary work would be problematic for [Sharpe] because he [was] unable to sit or walk for extended periods."  (*Id.* (citing Tr. at 238).)  The ALJ further noted that Dr. Peets concluded in a July 10, 2007 report

that Sharpe was "not suited for any type of employment, including sedentary employment, due to his persistent pain which is exacerbated by minimal physical activity." (*Id.* (citing Tr. at 262).)  Ultimately, however, the ALJ afforded these statements only "limited weight," explaining that "they were made well after the expiration of the date last insured." (*Id.*)  Sharpe contends that the ALJ erred in not affording these statements controlling weight. (*See* Pl. Br. at 12-16, Dkt. No. 9.)

The treating physician rule provides that the opinion of a treating physician is generally given controlling weight if it is based on well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998).  Furthermore, "while a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (citations omitted).  An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Where controlling

weight is not given to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and (6) other relevant factors tending to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The "ultimate finding of whether a claimant is disabled and cannot work [is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions ...." *Snell*, 177 F.3d at 133. Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

14

Here, the ALJ did not err in affording only limited weight to Dr. Peets's 2007 statements.  The ultimate determination of whether Sharpe was disabled and unable to work was one for the ALJ to make, not Dr. Peets.  Thus, Dr. Peets's assertions that Sharpe could not work are alone insufficient to compel that finding.  This is especially so given Dr. Peets's failure to provide any specific assessment of Sharpe's functional abilities despite the ALJ's repeated requests for such an assessment.  (Tr. at 142.)

In addition, neither of Dr. Peets's 2007 statements—which were given eleven and sixteen months after the expiration of the relevant period—specify or give any indication of the period to which they applied. While a treating physician's opinion given after the relevant period can be entitled to controlling weight, that opinion must be retrospective in nature. *See Byam*, 336 F.3d at 183.  And given that Dr. Peets was repeatedly uncooperative in providing requested information as to Sharpe's functional abilities, the ALJ was within his discretion in not recontacting Dr. Peets for a retrospective diagnosis.  *See* 20 C.F.R. § 404.1512(e)(2) (explaining that seeking additional evidence or clarification from a medical source is not required when it is known from past experience that the source either cannot or will not provide the necessary findings).

15

Moreover, Dr. Peets's assertions that Sharpe could perform no work conflict with other evidence of record.  For example, as noted earlier, the consultative findings of both Drs. White and Goodman indicated that Sharpe was capable of a least some work: Dr. White determined based on the evidence as of August 2005 that Sharpe was capable of performing light exertional work, (Tr. at 184-85); and Dr. Goodman, based on all of the record evidence, opined that Sharpe retained the ability to perform the exertional requirements of sedentary work during the relevant period, (Tr. at 273-75).  Dr. Goodman noted that Sharpe was able to shop; travel by himself; use public transit; walk at a reasonable pace; climb a few steps; prepare simple meals; care for his personal hygiene; and sort, handle, and use paper files.  (Tr. at 279.)  Indeed, as set forth in the ALJ's decision, Sharpe testified that he "[took] care of his [80 year-old] mother, [did] all the cooking and laundry at home, and [was] able to mow the grass."  (Tr. at 17.)  Sharpe also testified that he did dishes, swept and vacuumed the floors, went grocery shopping, and had no problems reading or writing.  (Tr. at 90-92, 287-88 299-302.)  Sharpe's mother corroborated Sharpe's testimony as to these activities.  (Tr. at 115.)

Accordingly, in light of this evidence, the court finds no error in the

ALJ's decision to afford limited weight to the non-retrospective 2007 statements of Dr. Peets.

**D.    RFC Determination**

Sharpe argues that the ALJ erred in determining that he retained the RFC "to perform sedentary work ... that allows for alternating as needed between sitting and standing." (*See* Pl. Br. at 18-20, Dkt. No. 9; Tr. at 16.) However, based on the record evidence, including the findings of Drs. White and Goodman and evidence regarding Sharpe's daily activities—most of which has already been discussed at length above—the court rejects Sharpe's argument and finds that the ALJ's RFC determination that Sharpe could perform sedentary work with a sit/stand option was supported by substantial evidence and should therefore be affirmed.

**E.    Subjective Complaints of Pain**

Sharpe argues that the ALJ failed to properly evaluate his subjective complaints of pain and disabling symptoms. (Pl. Br. at 23-24, Dkt. No. 9.) This argument is without merit.

A plaintiff may suffer some degree of pain as a result of a condition. However, "some pain" does not automatically translate into disabling pain.

*See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...."  *See* 42 U.S.C. § 423(d)(5)(A).  The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).

The ALJ must first evaluate the objective medical evidence to determine whether the claimant's impairments "could reasonably be expected to produce the pain or other symptoms alleged ...."  20 C.F.R. §§ 404.1529(a), 416.929(a).  "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work."  *Crouch v. Comm'r, Soc. Sec. Admin.*, 6:01-CV-0899, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).  But, if the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors relevant to the claimant's symptoms.

See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).  These factors include, among other things, the claimant's daily activities; the location, duration, frequency, and intensity of the pain; the type, dosage, effectiveness, and side effects of medication; and other treatment received or measures taken to relieve the pain.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 1996 WL 374186, at *4.  Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations of pain as long as she sets forth "her reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ determined that Sharpe's complaints of disabling pain were "less than fully credible."  (Tr. at 17.)  In making this determination, the ALJ pointed to Sharpe's activities during the relevant period, finding that they "were inconsistent with total disability."  (Id.)  As discussed above,

19

these activities included cooking, doing laundry, housecleaning, lawn mowing, and grocery shopping.  (Tr. at 90-92, 287-88 299-302.)  The ALJ further highlighted that "[o]n August 30, 2004 (well after the alleged onset disability), it was noted that [Sharpe] was training to be a truck driver"; that Sharpe "ha[d] received conservative treatments for his back disorder, rather than surgery"; and that although Sharpe "testified that his medication [made] him tired, ... the record does not indicate that [he] experiences a disabling degree of fatigue."  (Tr. at 17.)  The findings of Drs. White and Goodman, for reasons already discussed, add further support to the ALJ's credibility determination.  (Tr. at 184, 268-73.)

Accordingly, given the substantial evidence undermining Sharpe's subjective complaints of disabling pain, the court rejects Sharpe's argument that the ALJ's credibility determination was improper.

## F.    <u>Vocational Expert Testimony</u>

At step five, after determining that Sharpe did not retain the RFC to perform his past relevant work as a cleaner, a driver, a packer, or a courier, the ALJ determined that "there were jobs existing in significant numbers in the national economy that Sharpe could have performed."  (Tr. at 17.) Sharpe argues that the ALJ erred in this step-five determination,

contending that a vocational expert should have been consulted to establish the extent to which his nonexertional limitations diminished his ability to work.  (*See* Pl. Br. at 20-23, Dkt. No. 9.)  The court disagrees.

At step five, an ALJ is required to perform a two-part inquiry, first assessing the claimant's job qualifications by considering his physical ability, age, and work experience, and then determining whether jobs exist in the national economy that the claimant could perform.  *See* 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).  The second part of this two-part process is generally satisfied by referring to the applicable rule set forth in the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Grids).  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  Thus, an ALJ may rely exclusively on the Grids for guidance in gauging the range of work available to a claimant, even if the claimant suffers from non-exertional impairments.  *Id.* at 605.  Indeed, only where "a claimant's non-exertional impairments *significantly* limit the range of work permitted by his exertional limitations" is such exclusive reliance on the Grids inappropriate. *Id.* at 605-06 (emphasis added and internal quotation marks and citation omitted).  "Significant" limitations exist if there is "an additional loss of work

21

capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606.

Here, in reaching his step-five conclusion, the ALJ considered Sharpe's age, education, and RFC of sedentary work, finding that given these factors, a finding of "not disabled" under Rule 201.21 of the Medical-Vocational Guidelines was appropriate. (Tr. at 18.) In recognizing Sharpe's nonexertional limitations, the ALJ further concluded that "[a]lthough [Sharpe] requires a sit/stand option ... [he] does not need to alternate between sitting and standing so frequently that the occupational base of unskilled sedentary work would be significantly eroded." (*Id.*) Given the record evidence, the court agrees with the Commissioner that the occupational base of qualifying work—consisting of approximately 200 separate occupations, each of which represent numerous jobs in the national economy, *see* 20 C.F.R. Pt. 404, Subpt. P, Appx. 2 § 201.00(a)—was not significantly eroded by Sharpe's need for a sit/stand option. Accordingly, the court rejects Sharpe's arguments that the ALJ's use of the Guidelines at step five was improper and that his ultimate step-five determination is not supported by substantial evidence.

## G.    Remaining Findings and Conclusions

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence and is therefore affirmed.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Sharpe's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 29, 2010
Albany, New York

United States District Court Judge

23